Mr. Raymond E. Carper Property Tax Administrator Department of Local Affairs Division of Property Taxation 1313 Sherman Street Denver, CO 80203
Dear Mr. Carper:
This is in reply to your letter of June 21, 1979, to the attorney general, wherein you seek an opinion on several questions concerning the valuation of land classified as agricultural which produces income not attributable to agricultural use. Your questions will be answered in the order asked.
QUESTIONS PRESENTED AND CONCLUSIONS
1. In valuing agricultural land, can the assessor consider and include nonagricultural income attributable to the land such as from mineral leases and from hunting and fishing rights, or must the assessor consider only the income attributable to the agricultural uses of the land?
 In the valuation of agricultural land the assessor can consider nonagricultural income attributable to the land. Of course, if the income is derived from a use of the land not for the primary purpose of agriculture, as defined in C.R.S. 1973, 39-1-103(6)(a)(I), the land so used should be reclassified from agricultural use to its present class.
2. If land income attributable to nonagricultural uses can be included in determining the value of agricultural land, must this nonagricultural net income be capitalized at eleven and one-half percent, the same as net income attributable to agricultural uses, or can a different capitalization rate be used when more appropriate?
If the income is derived from agricultural lands the income attributable to nonagricultural uses must be capitalized at the rate of eleven and one-half percent in view of that portion of C.R.S. 1973, 39-1-103(5)(a) (1978 Cum. Supp.), which states that "the actual value of agricultural lands, exclusive of building improvements thereon, shall be determined by consideration of the earning or productive capacity of such lands during a reasonable period of time, capitalized at a rate of eleven and one-half percent." While it may be reasonably asserted that the legislature did not contemplate use of the capitalization rate as to income derived from nonagricultural uses, the language of the quoted sentence is so broad that deviation from the announced capitalization rate cannot be justified in the absence of a subsequent legislative pronouncement, especially in view of the mandatory language of the current statute.
3. Does C.R.S. 1973, 38-30.5-109 (1978 Cum. Supp.) preclude the assessor from including income received from hunting or fishing rights in determining the value of agricultural land if such rights are transferred by a conservation easement in gross rather than by a lease?
 My conclusion is that a conservation easement in gross, if created pursuant to section 501(3) of the Internal Revenue Code, may be exempt from taxation.
4. If the assessor had previously determined the value of agricultural land by including both the income attributable to agricultural uses and the income from leases for hunting and fishing rights, would the assessor have to disregard the income from hunting and fishing rights if such rights were to be transferred by a conservation easement in gross rather than by lease?
If hunting and fishing rights, as conveyed, fall within the definition of "conservation easement in gross", as defined in C.R.S. 1973, 38-30.5-102, the assessor could not tax the owner of the easement if the easement is owned by an exempt organization. As stated above in 3, if owned by a nonprofit organization but not used for charitable purposes the easement could be taxed and this value plus the valuation of the land subject to the easement should equal the valuation which would be determined if no conservation easement existed.
5. If the assessor had not previously included the income from leases for hunting and fishing rights in valuing agricultural land even though normal owner management practices in the area are to garner income from such rights, could he include income from hunting and fishing rights in the future if such rights were to be transferred by a conservation easement in gross rather than by lease?
 This question appears to be fully answered by the answers to 3 and 4 above and therefore those conclusions are not restated.
ANALYSIS
If a conservation easement in gross, as defined in article 30.5 title 38, C.R.S. 1973 (1978 Cum. Supp.) is created, the owner of the easement is subject to taxation of that easement in gross if not otherwise exempt from taxation. It is noted that a conservation easement in gross may only be created through a grant to a governmental entity or a charitable organization exempt under section 501(c)(3) of the Internal Revenue Code of 1954. C.R.S. 1973, 38-30.5-104(2) (1978 Cum. Supp.). A lease of hunting or fishing rights if not in fact within the definition of a conservation easement in gross should be treated as income attributable to nonagricultural uses.
A conservation easement in gross to a governmental entity exempt from taxation as public property pursuant to article X, section4, Colorado Constitution would be exempt from taxation. Similarly, a conservation easement in gross owned by an organization exempt under 501(c)(3) of the Internal Revenue Code of 1954 that is both owned and used solely and exclusively for strictly charitable purposes would be exempt from taxation pursuant to article X, section 5 of the Colorado Constitution and C.R.S. 1973, 39-3-101(l)(g)(I). In this respect, 501(c)(3) status cannot be equated with charitable and unless the property is used solely and exclusively for charitable purposes within the purview of the statute and constitutional provision the 501(c)(3) organization, as owner of the easement, would be subject to taxation of its easement.
In short, the owner of a conservation easement in gross, if exempt from taxation as a charitable or governmental organization, could not be taxed on its conservation easement. In those instances where the owner of a conservation easement is subject to taxation, the valuation for assessment of the easement plus the valuation of the land of the grantor subject to the easement "shall equal the valuation for assessment which would have been determined as to such lands if there were no conservation easement." C.R.S. 1973, 38-30.5-109 (1978 Cum. Supp.). If the conservation easement is owned by an exempt organization the valuation of the grantor's interest in the land subject to the easement would, unless conditions changed, be the valuation of the land less the valuation of the easement granted to the easement owner.
The creation of a conservation easement could, subsequent to such creation, preclude the assessor from considering income from hunting and fishing rights previously considered by the assessor in the valuation of land before a conservation easement was created.
SUMMARY
To briefly summarize my opinion, nonagricultural income attributable to agricultural land may be considered and included in the assessment of such land. Such income must then be capitalized at a rate of eleven and one-half percent. If such nonagricultural income is in the form of rights transferred by a conservation easement, it may be exempt from consideration by the assessor, even if previously included in valuation for assessment.
Very truly yours
 J.D. MacFARLANE Attorney General
TAXATION AND REVENUE AGRICULTURE GAME AND FISH
C.R.S. 1973, 39-1-103(6)(a)(I) C.R.S. 1973, 39-1-103(5)(a) C.R.S. 1973, 38-30.5-109
C.R.S. 1973, 38-30.5-102
C.R.S. 1973, 38-30.5-104(2)
Colo. Const. art. X, § 5
LOCAL AFFAIRS, DEPT. OF Property Taxation, Div. of
Non-agricultural income attributable to agricultural land may be considered and included in the assessment of such land. Such income must then be capitalized at a rate of eleven and one-half percent. If such nonagricultural income is in the form of rights transferred by a conservation easement, it may be exempt from consideration by the assessor, even if previously included in valuation for assessment.